John J. WILLIAMS and Elizabeth M. Williams, his wife, Plaintiffs,

v.

INTERNAL REVENUE SERVICE, Defendant.

Joseph M. DONLON and Catherine Donlon, his wife, Plaintiffs,

v.

INTERNAL REVENUE SERVICE, Defendant.

Civ. A. Nos. 4063, 4064.

United States District Court,
D. Delaware.

March 7, 1972.

Converse Murdoch and Robert E. Schlusser, of Murdoch & Walsh, Wilmington, Del., for plaintiffs.

F. L. Peter Stone, U. S. Atty., Wilmington, Del., Charles Stratton, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

STAPLETON, District Judge.

This is an action brought pursuant to the agency records provisions of The Freedom of Information Act, 5 U.S.C. § 552(a) (3), to enjoin the Internal Revenue Service from withholding records from the plaintiffs and to order their production. Jurisdiction is invoked under 5 U.S.C. § 552(a) (3).

The complaint alleges that on February 23, 1965, plaintiffs filed a petition with the Tax Court of the United States seeking a redetermination of certain deficiencies proposed by the Commissioner of Internal Revenue with respect to plaintiffs' federal income taxes for the calendar years 1957 through 1960 inclusive. It further alleges that plaintiffs, on October 12, 1970, requested copies of certain records of the Internal Revenue Service, identified in the request, pursuant to the provisions of The Freedom of Information Act and in conformity with the published rules of the Internal Revenue Service. The request was denied on the grounds that the records were exempt from disclosure under the provisions of section 3(e) (5) and (e) (7) of the Act, 5 U.S.C. § 552(b) (5) and (7).

Defendant has filed a motion to dismiss and a subsequent motion for summary judgment. In support of the latter motion, defendant was filed an affidavit of an internal revenue agent who was personally familiar with and had reviewed the contents of the IRS files requested by plaintiffs herein ("the Smallwood affidavit"). The affidavit states that the files contain the schedules, work papers and background data prepared or utilized by him in his effort "to determine taxable income by the net worth method." Specifically, the agent states:

"9. The net worth schedules provide the basis of the deficiency determinations and were prepared by me from the records submitted by the plaintiffs supplemented by numerous schedules, computations and independent investigations by me or at my request. The workpapers, computations, internal memorandums, recommendations and opinions in connection with the investigation and determination of the tax liabilities of the plaintiffs for the years 1957 through 1960 constitute the records requested by the plaintiffs in these Freedom of Information Act suits. The files also contained copies of arrest and conviction records of the male plaintiffs."

The affidavit concludes with the following conclusory allegations:

"12. The records sought by the plaintiffs are investigatory files and intra-agency memorandums as herein referred to, particularly in paragraph 9. Information contained in the files relating to the plaintiffs, not already in their possession, is investigatory in nature and was compiled for the purpose of enforcement of the Internal Revenue laws, or is intra-agency memorandums."

In response to this affidavit, plaintiffs filed affidavits of their own pursuant to Rule 56(f), Fed.R.Civ.P., stating that each of them "lacks information to enable him to determine whether or not the records requested are of the nature asserted by the defendant," and that "knowledge of the facts essential to justify his opposition to the defendant's motion for summary judgment is exclusively with and under the control of the defendant."

Defendant presses several grounds upon which it believes it is entitled to have the complaint dismissed or summary judgment entered in its favor. Under the view I take of the matter, the appropriate starting point is the defendant's claim to an exemption from disclosure under section 3(e) (7) of The Freedom of Information Act, which, as codified, provides:

"(b) This section does not apply to matters that are—

.   .   .   .   .   .

(7) investigatory files compiled for law enforcement purposes except to

the extent available by law to a party other than an agency;"

5 U.S.C. § 552(b) (7)

Based upon the legislative history and the case law, I conclude that the phrase "investigatory files compiled for law enforcement purposes" includes and, therefore, exempts investigatory files relating to the enforcement of all kinds of federal laws, civil as well as criminal. H.R.Rep.No.1497, 89th Cong., 2nd Sess. 11 (1966); * Wellford v. Hardin, 444 F.2d 21 (4th Cir. 1971); Bristol Myers Company v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935 (1970), cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52; Benson v. United States, 309 F.Supp. 1144 (D.Neb.1970); Clement Brothers Co. v. N.L.R.B., 282 F.Supp. 540 (N.D. Ga.1968), aff'd., 407 F.2d 1027 (5th Cir. 1969); Barceloneta Shoe Corp. v. Compton, 271 F.Supp. 591 (D.P.R.1967).

Plaintiffs do not contend that the records described in the Smallwood affidavit are beyond the scope of this phrase as so construed. Rather, they point to the fact that the investigatory files exemption does not protect files compiled for law enforcement purposes "to the extent available by law to a party other than an agency." They argue that "available by law" includes availability under the Federal Rules of Civil Procedure. In order to make this proposition of law material to the disposition of this case, however, plaintiffs must go on to say that any person is entitled to all he could obtain under the Federal Rules of Civil Procedure even though he is not at the time of the demand engaged in litigation to which those rules are applicable. See Rule 1, Fed.R.Civ.P.

If this is the meaning of The Freedom of Information Act, it automatically follows that anyone under law enforcement investigation by the government has a right to material contained in the files of the government prior to the institution of court action if he can meet the discovery requirements of the Federal Rules. Since plaintiffs maintain that the Act does away with any requirement of showing relevancy or materiality in connection with any particular problem, this would mean that any such person under investigation would be entitled to the files without any showing unless work-product or other privilege is asserted, and in the case of work-product, upon a showing of unavailability, etc. pursuant to Rule 26(b) (3).

Such a result clearly was not anticipated or intended by Congress when it adopted The Freedom of Information Act. The section of the House Report referred to above states:

"7. Investigatory files compiled for law enforcement purposes except to the extent available by law to a private party: This exemption covers investigatory files related to enforcement of all kinds of laws, labor and securities laws as well as criminal laws. This would include files prepared in connection with related Government litigation and adjudicative proceedings. *S.1160 is not intended to give a private party indirectly any earlier or greater access to investigatory files than he would have directly in such litigation or proceedings.*" (Emphasis supplied) H.R.Rep.No. 1497, 89th Cong., 2nd Sess. 11 (1966).

The Senate Report similarly indicates that the exemption was incorporated in the Act because of a concern that disclosure of investigatory files, except to the extent they were already available, "could harm the government's case in court." S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965). See also Long v. United States Internal Revenue Service, 339 F.Supp. 1266 (D.D.C.1971); Benson v.

---

* While S.Rep.No.813, 89th Cong., 1st Sess. (1965), which also deals with the Act, can arguably support a more restrictive construction of this exemption, such a construction is not compelled by the language of that report and both the House and Senate reports can be reconciled by accepting the former's interpretation on this point. See Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 799 (1967).

United States, 309 F.Supp. 1144 (D.Neb. 1970).

Section 3(e)(7) exempts investigatory files compiled for law enforcement purposes. The "exception" clause of the investigatory files exemption is, as I view it, merely in effect a savings clause. Congress did not intend to overrule by implication any existing law which would provide a particular individual in particular circumstances with a right to access. See, e.g., The Jencks Act, 18 U.S.C. § 3500, which gives criminal defendants the right of access to the prior statements of persons who have testified against them even though those statements may have been acquired by the government in the course of investigation.

■ This construction is entirely consistent with the general proposition that The Freedom of Information Act is a public disclosure statute giving "any person" a general right of access to government records without reference to his particular circumstances, his motive or his need. But the rights of specific persons under government investigation and seeking the files dealing with them were for good reasons not meant to be affected by this general public disclosure statute. The law with respect to access to them is to be determined by the law as it exists without reference to The Freedom of Information Act.

■ The discovery provisions of the Federal Rules of Civil Procedure give disclosure rights, with certain exceptions not here relevant, only to parties to litigation pending in the United States District Court. Rule 1, Fed.R.Civ.P. At the time of the demand here, plaintiffs were not in this position and had no rights under the Federal Rules. Rather, they were parties to a proceeding before the Tax Court.

The parties here disagree on the extent to which the rules of the Tax Court authorized discovery of the material which the plaintiffs seek. To the extent those rules do authorize access, it can be said, in one sense, that the contents of the IRS files are not within the scope of the section 3(e)(7) exemption. This does not mean, however, that this Court should necessarily allow the petitioner to seek in this proceeding any material which is not exempt solely because of the operation of the rules of the Tax Court. Under The Freedom of Information Act, the federal district courts are granted equity jurisdiction to order the production of agency records in appropriate cases. This court is not, in my judgment, required to exercise that jurisdiction in a manner which would involve applying the Tax Court rules of procedure in a collateral proceeding. See Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 767 (1967). If the plaintiffs are entitled to the access they seek under the Tax Court rules, they should proceed to enforce their rights in that court.

■ If I correctly understand the positions of the parties, the conclusions reached above should dispose of this matter. Specifically, it is my understanding that the plaintiffs resisted the motion for summary judgment and filed their Rule 56(f) affidavits not because they wished to litigate further the question of whether, in fact, the materials described in the Smallwood affidavit are "investigatory files compiled for law enforcement purposes" as that phrase has now been construed, but rather because they believed they should not suffer summary judgment without an opportunity to present sufficient information to allow them to demonstrate to the court that they were entitled to access of the scope permitted under the Federal Rules of Civil Procedure. If this understanding is in error and plaintiffs request it within ten days of the date of this opinion, the court will inspect the file *in camera* solely for the purpose of determining whether the documents contained therein were, in fact, compiled for law enforcement purposes. Cowles Communications, Inc. v. Department of Justice, 325 F.Supp. 726 (N.D.Cal.1971). If no such request is made, the defendant may submit a form of order granting summary judgment.