**Louis KRUH, Plaintiff,**

v.

**GENERAL SERVICES ADMINISTRATION, Defendant.**

No. 75 C 909.

United States District Court, E. D. New York.

Oct. 20, 1976.

---

Medowar & Kroll, Merrick, N. Y. by Jerome S. Medowar, Merrick, N. Y., for plaintiff.

David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y. by George H. Weller, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

NEAHER, District Judge.

This is plaintiff's second action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(3), seeking to compel disclosure of a memorandum, dated October 24, 1952, from President Harry S. Truman to the Secretaries of State and Defense which established the National Security Agency (the Truman Memorandum). In the first action, 64 F.R.D. 1 (E.D.N.Y.), this court held that the document was exempt from disclosure because it was in fact classified "Top Secret," an exemption under 5 U.S.C. § 552(b)(1),[1] and that under *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the court was precluded from making any inquiry into the reasonableness of the classification. Thereafter the statute was amended,[2] permitting inquiry into the propriety of classification, and plaintiff

---

1. Before amendment, Exemption 1 of the FOIA read:

   "(b) This section does not apply to matters that are—

   (1) specifically required by Executive order to be kept secret in the interest of the nation-al defense or foreign policy;" 5 U.S.C. § 552(b)(1).

2. After amendment, Exemption 1 reads:

   "(b) This section does not apply to matters that are—

once again attempted to obtain the document. He was again unsuccessful throughout the appropriate administrative levels, and has commenced the present action to compel production of the Truman Memorandum under FOIA as amended.

The matter is now before the court on (1) plaintiff's motion to compel production of the minutes of two meetings of the Interagency Classification Review Committee at which his first administrative appeal in his quest for the Truman Memorandum was discussed, Rule 37, F.R.Civ.P.,[3] and (2) defendant's cross-motion for summary judgment denying disclosure of the Truman Memorandum, Rule 56, F.R.Civ.P. The summary judgment motion will be considered first, since a dispositive ruling would obviate the discovery motion.

■ Defendant seeks summary judgment on the ground that the Truman Memorandum is exempt from disclosure under Exemption 3 of FOIA, which provides for nondisclosure of matters that are "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3). Exemption 3 evidences a Congressional judgment that, despite the general intent of FOIA to open up to the public information concerning the public business, certain secrecy statutes should nonetheless remain in force. These are statutes which specifically restrict access to governmental records on the basis of Congressional decisions that the confidentiality of certain information in certain agencies is essential to protect the public interest. *Ad-*

ministrator, *FAA v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 2146–47, 45 L.Ed.2d 164 (1975).

■ The government, unfortunately for plaintiff, has pointed to just such a statute, one which by its terms negates any requirement to make disclosure of information about the National Security Agency. It reads:

"[N]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency." Pub.L. No. 86–36, § 6, 73 Stat. 63 (1959).

Although a specific aim of P.L. 86–36 was to exempt the National Security Agency from the U.S. Civil Service Commission's requirements of disclosure of personnel data and other information, it is manifest that this was in aid of a broader, overriding purpose; *i. e.,* that *no law* shall require disclosure of the highly sensitive organizational and functional matters or activities of that Agency. This would necessarily include such a law as FOIA. The 1974 amendments of FOIA would not alter such an exemption.[4]

■ Statutes which specifically exempt disclosure of documents under Exemption 3 need not precisely name the documents or describe the category in which they fall.

---

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;" 5 U.S.C. § 552(b)(1), as amended.

3. Plaintiff seeks production of the Review Committee's complete minutes in order to establish his right to examine the Truman Memorandum, arguing their relevance because they reflect discussion about declassifying the Memorandum and lack of privilege because he asserts they are now public documents, having been disclosed to him in part in connection with his prior action.

4. A conforming amendment to the "Government in the Sunshine Act," Pub.L. No. 94–409, enacted September 13, 1976, effective 180 days

from enactment, amends Exemption 3 of FOIA so as to exempt from disclosure matters

"(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . ."

The amendment—even if now in effect—would not change the outcome here. Section 6 of P.L. 86–36 specifically "refers to particular types of matters to be withheld"; namely, "the organization or any function of the National Security Agency, of any information with respect to the activities thereof . . . .."

*Administrator, FAA v. Robertson, supra,* 96 S.Ct. at 2147. Thus, the statute which permitted the Administrator of the FAA to withhold information when, in his judgment, disclosure would adversely affect the interests of an objecting party and was not required in the interest of the public, 49 U.S.C. § 1504, despite the breadth of the disclosure granted, was held to come within the purview of Exemption 3. *Id.* The function of this court's *de novo* inquiry when an agency asserts a right to withhold a document based on Exemption 3 is to determine "the factual existence of such a statute, regardless of how unwise, self-protective, or inadvertent the enactment might be." *EPA v. Mink, supra,* 410 U.S. at 95 n.*, 93 S.Ct. at 840 (Stewart, J., concurring).

■ The plain language of P.L. 86–36 renders it unnecessary to tarry long with

plaintiff's criticism of defendant's affidavits as conclusory and therefore insufficient to establish an exemption. Contrary to plaintiff's contentions, those affidavits do not merely recite the statutory language.[5] The Davis affidavit, *inter alia*, states that the Truman Memorandum establishes a mechanism within the National Security Council to establish policy for and advise the President of activities of the intelligence community, outlines the mission of the National Security Agency and details the responsibilities of the Director. In like fashion, the Allen affidavit relates that, under the Memorandum, the National Security Agency was created as a separately organized agency within the Department of Defense and the Secretary of Defense was designated Executive Agent for the conduct of communications intelligence and security activities. Clearly these matters refer to

---

5. The affidavit of the Staff Secretary of the National Security Council states:

"6. The seven-page, October 24, 1952 Memorandum from the President to the Secretaries of State and Defense is the foundation upon which all past and current communications intelligence activities of the United States Government are based. It was classified TOP SECRET, but was downgraded to SECRET on September 18, 1975, as described above. The text of the 1952 Memorandum was incorporated almost verbatim in a subsequent National Security Council Intelligence Directive (NSCID No. 9). Much of the substance is contained in the currently active NSCID 6 which details present activities and responsibilities of the Intelligence Community.

"7. The 1952 Memorandum establishes a mechanism within the National Security Council to establish policy for and to advise the President of these activities. It directs the reorganization of the United States Communications Intelligence Board (USCIB), including its composition, responsibilities, and procedures and further defines its authority. The Memorandum also outlines the mission of the National Security Agency and details the specific responsibilities of its Director.

"8. Release of this detailed description of the organization, functions and procedures of the United States Government with regard to the conduct of this sensitive activity, much of which is still valid today, could cause serious damage to the national security. Such details would increase the possibility of penetration of or interference with such United States activities by a potential adversary so

as to limit the effectiveness of our activities. It might also severely limit the amount of information available to the United States, information which is vital to the careful, deliberate, analytical process of decision-making in the area of national security policy and could also affect adversely our ability to act quickly, decisively and with the expectation of success in a crisis situation." Affidavit of Jeanne W. Davis, ¶¶ 6–8.

The affidavit of the Director of the National Security Agency recites:

"4. The subject of this Memorandum is 'Communications Intelligence Activities.' It deals with the conduct of communications intelligence activities and primarily with the organization, functions and activities of the National Security Agency. This Memorandum remains the principal charter of the National Security Agency and is the basis of a number of other classified documents governing the conduct of communications intelligence activities and the operations, functions activities of the National Security Agency.

\* \* \* \* \* \*

"6. Disclosure of this Memorandum would reveal information concerning the current organization, functions and activities of the National Security Agency and the current conduct of communications intelligence activities. I believe that foreign nations are not aware of certain specific information relating to these matters and that disclosure would thus be prejudicial to the defense activities and conduct of foreign affairs of the United States." Affidavit of Lt. Gen. Lew Allen, Jr., ¶¶ 4, 6.

the function, organization or activity of the Agency and, under P.L. No. 86–36, are not required to be disclosed. Exemption 3 of FOIA therefore permits defendant to withhold the Truman Memorandum from public scrutiny.

Accordingly, defendant's motion for summary judgment is granted and plaintiff's motions are denied in all respects.

SO ORDERED.