**NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellant,**

v.

**HARDEMAN GARMENT CORPORATION, and Lauderdale Garment Corporation, Defendants-Appellees.**

Nos. 76–1392, 76–1393.

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1977.

Decided June 22, 1977.

---

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Abigail Cooley, Richard B. Bader, Counsel for Special Litigation, William Wachter, Carol De Deo, Washington, D. C., John F. Harrington, Region 26, N. L. R. B., Memphis, Tenn., for N. L. R. B.

Yelverton Cowherd, Jr., Bowling & Jackson, W. Kerby Bowling, Memphis, Tenn., for defendant-appellee.

Before CELEBREZZE and ENGEL, Circuit Judges, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

The National Labor Relations Board appeals from an order of the District Court compelling the disclosure of affidavits obtained from employees during investigation of unfair labor practice charges lodged against Appellees, the Hardeman Garment Corporation and the Lauderdale Garment Corporation.[1] The District Court held that the NLRB was required under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970), to submit the affidavits to the Court for *in camera* inspection and then the Court would decide, upon a showing of specific harm, which materials to withhold from Appellees.[2] Relying on *Title Guarantee Co. v. N. L. R. B.*, 407 F.Supp. 498 (S.D.N.Y. 1975), the District Court rejected the Board's contention that the affidavits were privileged from disclosure in their entirety by exemptions 5, 7(A), 7(C), and 7(D) of the FOIA.[3]

Under NLRB rules, affidavits of a witness are only available to a litigant "after a witness called by the general counsel or by the charging party has testified in a hearing upon a complaint . . . ." 29 C.F.R. 102.118(b)(1) (1975). The rules provide that "the trial examiner shall, upon motion of the respondent, order the production of any statement . . . of such witness in the possession of the general counsel which relates to the subject matter as to which the witness has testified [for] examination and use for the purpose of cross-examination." *Id.* In a different context, this Court has sustained the Board's refusal to provide broader pre-hearing discovery on at least two occasions. *See Raser Tanning Co. v. N.L.R.B.*, 276 F.2d 80, 83 (6th Cir. 1960); *N.L.R.B. v. Automotive Textile Products Co.*, 422 F.2d 1255 (6th Cir. 1970).[4] Appellees contend that the Board's discovery policy violates the FOIA. The general policy of the FOIA is to provide for liberal disclosure of information contained in governmental files unless it falls within a specific exemption in the Act. *See Title Guarantee Co. v. N.L.R.B.*, 534 F.2d at 488.

---

1. Appellees were charged with violating §§ 8(a)(1), (3) and (5) of the National Labor Relations Act. 29 U.S.C. § 158(a)(1), (3) and (5) (1970).

2. This procedure is authorized under 5 U.S.C. § 552(a)(4)(B) (1970).

3. (b) This section does not apply to matters that are—

> .   .   .   .   .

> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

> .   .   .   .   .

> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings .   .   . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source .   .   . .

5 U.S.C. § 552(b)(5), (7)(A), (C) and (D).

4. The extent of discovery in enforcement proceedings has been left to the rule-making power of the NLRB. 29 U.S.C. § 160(b) (1970). *See also* 29 U.S.C. § 156 (1970). *See N.L.R.B. v. Interboro Contractors, Inc.*, 432 F.2d 854, 857–60 (2d Cir. 1970); *Electromec Design & Development Co. v. N.L.R.B.*, 409 F.2d 631 (9th Cir. 1969). NLRB rules prohibit production of files except as required by the FOIA or upon

However, "discovery for litigation purposes is not an expressly indicated purpose of the Act." *Renegotiation Board v. Bannercraft Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants. *EPA v. Mink*, 410 U.S. 73, 79, 92, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). A litigant's "rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the [documents sought] greater than that shared by the average member of the public." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513, 44 L.Ed.2d 29 (1975).

The Board asserts that employee affidavits collected during the investigation of a pending unfair labor practice proceeding are protected from disclosure by exemption 7(A) of the Act, as "investigatory records compiled for law enforcement purposes . . . ." 5 U.S.C. § 552(b)(7)(A). Exemption 7, as originally enacted in 1967, exempted from disclosure "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." Act of June 5, 1967, Pub.L.No.90–23, § 1, 81 Stat. 54 (5 U.S.C. § 552(b)(7)). The legislative history of the original version of exemption 7 clearly indicates that Congress intended to include investigatory files of the NLRB within the exemption.[5] This construction of the statute was followed by courts which held that affidavits obtained during Board investigations were exempted from disclosure by exemption 7 of the FOIA. *See e. g., Wellman Indus., Inc. v. N.L.R.B.*, 490 F.2d 427, 430–31 (4th Cir. 1974); *N.L.R.B. v. Clement Bros., Inc.*, 407 F.2d 1027, 1031 (5th Cir. 1969); *Barceloneta Shoe Corp. v. Compton*, 271 F.Supp. 591, 593–94 (D.P.R.1967). Appellees submit that cases decided prior to 1974 are no longer valid precedents because the 1974 amendments to the FOIA drastically restricted the scope of the exemptions.

Exemption 7 was revised to prevent the disclosure of "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . . ." 5 U.S.C. § 552(b)(7)(A). The court below interpreted the amended exemption as requiring the Board to make a showing that disclosure of the particular documents requested would result in the specific harm the exemption was designed to prevent, *i. e.*, interference with enforcement proceedings. *See also Title Guarantee Co. v. N.L.R.B.*, 407 F.Supp. at 504.

In *Title Guarantee Co. v. N.L.R.B.*, 534 F.2d 484, 491–93 (2d Cir. 1976), the Second Circuit expressly overruled the district court opinion and held that all statements of employees obtained in connection with unfair labor practice proceedings pending before the NLRB are exempt from disclosure under § 552(b)(7)(A). Every circuit court called on to consider the question since then has reached the same conclusion. *See Goodfriend Western Corp. v. Fuchs*, 535 F.2d 145, 146–47 (1st Cir. 1976); *Roger J. Au & Son, Inc. v. N.L.R.B.*, 538 F.2d 80, 82–83 (3d Cir. 1976); *Climax Molybdenum Co. v. N.L.R.B.*, 539 F.2d 63, 64–65 (10th Cir. 1976); *Cessna Aircraft Co. v. N.L.R.B.*, 542 F.2d 834, 835 (10th Cir. 1976); *Maremont Corp. v. N.L.R.B.* (10th Cir. 1976); *Harvey's Wagon Wheel, Inc. v. N.L.R.B.*, 550 F.2d 1139 (9th Cir. 1976). *See also Deering Milliken, Inc. v. Irving (N.L.R.B.)*, 548 F.2d 1131 (4th Cir. 1977) (dictum); *New England Medical Center Hospital v. N.L.R.B.*, 548 F.2d 377 (1st Cir. 1977). Since the question has been thoroughly explored in these opinions, we will only comment briefly on why we believe this to be the correct result.

■ As noted previously, it was well established prior to 1974 that employee affidavits obtained during investigation of an unfair labor practice charge pending before

---

written consent of the Board or the Chairman. 29 C.F.R. § 102.118(a) (1975). *See also* 29 C.F.R. § 102.30 (1975).

**5.** *See e. g.*, 110 Cong.Rec. 17667 (1964) (remarks of Sen. Humphrey); *id.* at 17668 (remarks of Sen. Long).

the NLRB were exempted from disclosure by exemption 7 of the FOIA. *See e. g., Wellman Industries, Inc. v. N.L.R.B.*, 490 F.2d at 430–31. Senator Hart, the sponsor of the revised exemption 7, stated that his intention was not to change the underlying purpose of exemption 7, but to overrule a series of cases decided in the District of Columbia Circuit which had adopted a mechanical and unnecessarily broad interpretation of the exemption for investigatory files compiled for law enforcement purposes.[6] It is significant, however, that the legislative history to the 1974 amendments does not mention the cases which had upheld the NLRB's discovery rules. We agree with the *Title Guarantee* Court's observation that "Congress would be very reluctant to change the rather carefully arrived at limitations and procedures for discovery in unfair labor practice proceedings by way of an act which, while dealing with disclosure generally, does not purport to change such discovery." 534 F.2d at 492. It would require a much clearer showing of congressional intention to impute such drastic changes to the 1974 amendments to the FOIA. Also, the Board's discovery rules serve a two-fold purpose which is consonant with Congress' intentions in enacting exemption 7: to prevent premature disclosure of the results of the General Counsel's investigation so he could present his strongest case before the Board, and to protect sources of information so that employees and other persons having information would cooperate with Board investigators without fear of reprisal.[7] *See Wellman Indus., Inc. v. N.L.R.B.*, 490 F.2d 427, 431 (4th Cir. 1974). As the Court noted in *Title Guarantee*, premature disclosure of investigative affidavits would interfere with Board proceedings by enabling "suspected violators . . . to learn the Board's case in advance and frustrate the proceedings or construct defenses which would permit violations to go unremedied." 534 F.2d at 491. We have also had occasion in the past to note the natural reluctance of employees to cooperate in Board investigations by giving information prejudicial to their employer upon whose goodwill their continued employment may depend unless there are adequate assurances of anonymity and confidentiality.[8] *Montgomery Ward & Co. v. N.L.R.B.*, 377 F.2d 452, 455–56 (6th Cir. 1967); *Surprenant Mfg. Co. v. N.L.R.B.*, 341 F.2d 756, 763 (6th Cir. 1965). *See also N.L.R.B. v. Scrivener*, 405 U.S. 117, 121–22, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972); *Texas Industries, Inc. v. N.L.R.B.*, 336 F.2d 128, 134 (5th Cir. 1964).

---

**6.** Senator Hart remarked that "this amendment is by no means a radical departure from existing case law under the Freedom of Information Act." 120 Cong.Rec. 17034 (1974). Senator Kennedy, a proponent of the amendment, indicated that its purpose was to clarify the governmental interests that Congress had protected in the original provision. *Id.* at 17034–35. The following cases were cited in the legislative history as reading exemption 7 too broadly: *Center for National Policy Review on Race & Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370 (1974); *Ditlow v. Brinegar*, 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974); *Aspin v. Sec'try of Defense*, 160 U.S.App.D.C. 231, 491 F.2d 24 (1973); *Weisberg v. Dept. of Justice*, 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973) (*en banc*). 120 Cong.Rec. 17039–40.

**7.** 120 Cong.Rec. 17033 (1974) (remarks of Sen. Hart). *Compare* S.Rep.No.93–1200, 93d Cong., 2d Sess. 12 (1974), *with* H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966).

**8.** Appellees urge that government witnesses are adequately protected from harassment under existing law. They note that it is an unfair labor practice in violation of 8(a)(4) of the N.L.R.A., 29 U.S.C. § 158(a)(4) (1970), "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony" under the Act, *see N.L.R.B. v. Scrivener*, 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972), and that it is a criminal offense to intimidate a witness, 18 U.S.C. § 1505 (1970), or to interfere with the Board's investigative authority, 29 U.S.C. § 162 (1970). However, as the Board correctly points out, these remedies are inadequate to safeguard the integrity of ongoing unfair labor practice proceedings. Enforcement of the National Labor Relations Act depends on a charge filed with the Board by knowledgable individuals, the Board cannot initiate its own proceedings. *Nash v. Florida Industrial Comm'n*, 389 U.S. 235, 238, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967); *N.L.R.B. v. Industrial Union of Marine & Shipbuilding Workers*, 391 U.S. 418, 424, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968). Successful prosecution of an unfair labor practice case depends on individuals coming forward with evidence of a violation. Intimidation may be subtle and not susceptible of proof. Interference with

■ We realize that there is an element of unfairness in the Board's discovery rules to an employer seeking to prepare a defense to an unfair labor practice charge. The Board's discovery policy has been described as "trial by ambush." *New England Medical Center Hospital v. N.L.R.B.*, 548 F.2d at 387; *Capital Cities Communications, Inc. v. N.L.R.B.*, 409 F.Supp. 971, 977 (N.D.Cal. 1976). However, Congress has granted authority to the Board to regulate discovery procedures in proceedings before it, and the wisdom of the Board's decision to limit discovery in unfair labor practice proceedings is not an issue before the Court.[9] We need only decide whether the Board's policy of withholding an employee affidavit from the employer until after he testifies violates the Freedom of Information Act. We hold that it does not. Because we conclude that employee affidavits obtained during investigation of pending unfair labor practice proceedings are exempt from disclosure under 7(A),[10] we need not reach the issue of whether the affidavits would also be exempted under 5, 7(C) or 7(D). The judgment of the District Court ordering disclosure of the affidavits is reversed.

Reversed.

---

proceedings may go undetected, and if detected and a complaint is filed, it is not likely that appropriate sanctions could be imposed until well after the unfair labor practice proceeding has been terminated. Meanwhile, the violations go unremedied. Also, the criminal provisions cited by Appellees were only meant to apply in extreme cases where there is actual proof of tampering or obstruction—not to the more common situation where employees are naturally reluctant to come forward with information in the early stages of an investigation out of fear of antagonizing their employer.

9. An employer is free to obtain information upon which to base a defense by interviewing employees, but this course of conduct is not without peril. *See N.L.R.B. v. Martin A. Gleason, Inc.*, 534 F.2d 466, 479–81 (2d Cir. 1976); *N.L.R.B. v. Winn-Dixie Stores, Inc.*, 341 F.2d 750, 753 (6th Cir. 1965); *Surprenant Mfg. Co.*

*v. N.L.R.B.*, 341 F.2d at 762–63. *See also Johnnie's Poultry*, 146 N.L.R.B. 770 (1964).

10. This holding is limited to employee statements which are relevant to pending enforcement proceedings. *Cf. New England Medical Center Hospital v. N.L.R.B.*, 548 F.2d at 385–87. Although statements given by certain non-employees may be automatically exempt from disclosure under the FOIA, *see Title Guarantee v. N.L.R.B.*, 534 F.2d at 491, 492 (statements of union representatives), and *Roger J. Au & Son, Inc. v. N.L.R.B.*, 538 F.2d at 83 (statements of charging parties and potential witnesses), ordinarily *in camera* inspection of the documents by the district court will be required to test claims to an exemption. 5 U.S.C. § 552(a)(4)(B). *See also Harvey's Wagon Wheel, Inc. v. N.L.R.B.*, 550 F.2d at 1143 & n. 6.